Submitted on record and petitioner's brief September 30, 1986, reversed and remanded for reconsideration July 22, 1987

# PRUETT,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION et al,
*Respondents.*

## (86-AB-412; CA A39781)
740 P2d 196

Stephen R. Skipton, Eugene, filed the brief for petitioner.

No appearance for respondent Vern Johnson Construction Co.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Claimant seeks review of an order of the Employment Appeals Board (EAB) disqualifying him from unemployment benefits on the ground that he voluntarily left work without good cause and wilfully misrepresented the reason for his employment separation in order to obtain benefits. We reverse.

EAB adopted the referee's order, which included these findings:

"(1) Claimant worked for Vern Johnson Construction Co. as a laborer from October 15, 1985 until October 25, 1985. (2) Claimant voluntarily quit his job on October 27 because he believed the employer was not paying him the wages he had been promised. (3) Claimant is a member of union local #85, and it was through a union dispatch slip (Exhibit 4) that claimant was referred to the job with the employer. (4) The union dispatch slip indicates that claimant's hourly rate for the job was $11.27. (5) After receiving his paycheck on October 25, claimant discovered that he was being paid $9.76 per hour. (6) On October 26, claimant telephoned the employer and spoke with G. Johnson, who advised him that he was being paid the amount employer believed was correct, that the matter would be looked into, and that if there had been a mistake, employer would see that it was taken care of. (7) Claimant also telephoned his union representative, H. Herzberg, who informed claimant that he believed the $11.27 figure was correct, and that he would check into it as soon as possible. (8) On October 27, claimant informed the employer that he was quitting his job because he couldn't afford to work for $9.76 per hour. (9) Early in October the collective bargaining agreement which covered claimant had been renegotiated and the hourly rate for the type of work claimant was doing for this employer had been adjusted down from $11.27 to $9.76. (10) H. Herzberg was not aware of this when he sent claimant out on this job on October 15, and the information he gave claimant in regard to the hourly wage was incorrect. (11) When claimant filed his 'request to reopen claim or additional claim' on October 29, he indicated that he was no longer working for the employer because of 'lack of work' (Exhibit 1). (12) When claimant left his job on October 27, he believed that his last day of work for the employer was going to be October 28, when he was scheduled to work a double shift in order to finish up the job. (13) The Employment Division was informed by the employer that claimant had quit his job (Exhibit 2). (14) When claimant filled in a 'separation statement' on November 12, he indicated that he left his job

because the employer refused to pay him union wages (Exhibit 3). (15) In a written statement signed by claimant on November 29, claimant indicated that he had listed 'lack of work' as the reason for his work separation because he 'did not want to hassle with Johnson Construction.' (Exhibit 6)."

The referee concluded that "the quit was without 'good cause' because claimant had the reasonable alternative of letting his union representative and employer look into the matter, while claimant worked the additional day that he believed was left of the job." Pursuant to ORS 657.176, claimant was denied benefits until he earned remuneration equal to or in excess of four times his weekly benefit amount.[1] The referee also concluded, "based on inconsistencies in claimant's statements regarding his work separation, that he deliberately misrepresented his work separation when he indicated that he was no longer working for the employer, due to 'lack of work.' " Therefore, under ORS 657.215, he was disqualified for four otherwise compensable weeks.[2]

---

[1] ORS 657.176(2) provides:

"An individual shall be disqualified from the receipt of benefits until the individual has performed service in employment subject to this chapter, or for an employing unit in this or any other state or Canada or as an employe of the Federal Government, for which remuneration is received which equals or exceeds four times the individual's weekly benefit amount subsequent to the week in which the act causing the disqualification occurred, if the authorized representative designated by the assistant director finds that the individual:

"(a) Has been discharged for misconduct connected with work, or

"(b) Has been suspended from work for misconduct connected with work, or

"(c) Voluntarily left work without good cause, or

"(d) Failed without good cause to apply for available suitable work when referred by the employment office or the assistant director, or

"(e) Failed without good cause to accept suitable work when offered."

[2] ORS 657.215 provides:

"An individual is disqualified for benefits for a period not to exceed 26 weeks whenever the assistant director finds that the individual has wilfully made a false statement or misrepresentation, or wilfully failed to report a material fact to obtain any benefits under this chapter. The length of such period of disqualification and the time when such period begins shall be determined by the assistant director in the discretion of the assistant director, according to the circumstances in each case. During each week of disqualification so imposed, an individual must meet all the eligibility requirements of this chapter. Any disqualification imposed under this section may be applied to any week claimed but remaining unpaid on the date of the disqualifying decision under this section but not to exceed three years from the date of the decision. The assistant director may cancel such disqualification wholly or in part as the assistant director deems proper and equitable."

Claimant contends that EAB should have applied ORS 657.176(7), which significantly reduces the penalty for doing so.[3] That statute provides:

"For purposes of applying subsection (2) of this section when an employer has notified an individual that the individual will be discharged on a specific date and it is determined:

"(a) That such discharge would not be for reasons which constitute misconduct connected with the work;

"(b) The individual voluntarily left work without good cause prior to the date of the impending discharge; and

"(c) The voluntary leaving of work occurs no more than 15 days prior to the date of the impending discharge,

"then such separation from work shall be adjudicated as if the voluntary leaving had not occurred and the discharge had occurred. However, the individual shall be ineligible for benefits for the period including the week in which the voluntary leaving occurred through the week prior to the week in which the individual would have been discharged."

There are four factors to be considered in determining if ORS 657.176(7) applies: (1) whether the employer notified an individual of impending discharge on a specific date, (2) whether the discharge was for misconduct, (3) whether the individual voluntarily left without good cause and (4) whether the voluntary quit occurred within 15 days of the date of impending discharge. The referee concluded, and claimant does not dispute, that he voluntarily left work without good cause. The referee did not make findings directly addressing the other factors.

■ Generally, when it becomes apparent to a reviewing court that necessary findings have not been made, the proper remedy is to remand for appropriate findings. However, when the evidence relevant to the findings is uncontroverted, a remand becomes unnecessary, and we may consider the findings that should have been made. *Michelet v. Morgan,* 11 Or App 79, 83, 501 P2d 984 (1972). The evidence is uncontroverted that claimant was notified that October 28 would be

---

[3] EAB's order did not address the applicability of ORS 677.176(7). Because claimant raised the issue before both the referee and EAB and it was pertinent to his case, it should have been addressed. *de St. Germain v. Employment Division,* 74 Or App 484, 491, 703 P2d 986 (1985).

his last day of work, that the discharge was not for misconduct and that the quit occurred within 15 days of the impending discharge. We conclude that ORS 657.176(7) was applicable and that disqualification is limited to one week.

■    Claimant also argues that EAB erred in concluding that he made a wilful misrepresentation to obtain benefits, contending that there is no rational relationship between the findings and the conclusion. He is correct that there must be a rational relationship between the findings and the legal' conclusions which an agency reaches. *Balduyck v. Employment Division,* 72 Or App 242, 695 P2d 944 (1985). In this case, the required rational relationship between the findings and EAB's conclusion that claimant's acts constitute "wilful misrepresentation" is not present.

The meaning of "wilful misrepresentation" is for the agency to discern in the light of legislative intent and policy. *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980). However, the legislature's use of the term "wilful" requires that an *intent* to misrepresent for the purpose of obtaining benefits be found. The findings do not support the conclusion that claimant intentionally misrepresented his work status to obtain benefits. The evidence indicates that he left work because he felt that he was being cheated by being underpaid. At the time when he requested benefits, he believed that he would have been out of work had he continued and therefore would have been eligible for benefits. At hearing, he explained the discussion he had had with representatives of the Employment Division:

> "What I meant to say that I had a labor dispute with them and beings how the lack of work—there would have been lack of work anyway, I just filled out that the lack of work instead of just putting down a dispute. I thought I would be out of work anyway. Even though I had a dispute with them, I didn't think that that dispute at that time would affect the fact that I was out of work. I would have been out of work."

He also stated:

> "When I filed my claim, I honestly thought that there was no work beyond that point anyhow so I just put 'lack of work' because even if I had worked that day, there would have been no further work."

The findings fail to address claimant's facially

reasonable explanations of his previous inconsistent state-
ments. In the light of the explanations, the inconsistent state-
ments alluded to in the findings do not, standing alone,
support the conclusion that claimant wilfully misrepresented
his quitting. Thus, the findings are inadequate to support the
conclusion that he violated ORS 657.215.

Reversed and remanded for reconsideration.